Here next in number 2009 1570 design against the United States I have with me today, Donny Fenske-Brandl, Senior In-House Counsel at Target Corporation. The first thing I'd like to do is just put this case into its proper context. Under the Constitution, we all know that only Congress has the power to enact and to amend statutes. But that is a power that Congress can delegate to the Executive Branch, or they can delegate a portion of that authority to the Executive Branch. Under the statutes at issue in this case, 19 U.S.C. 3005 or 3006, Congress delegated a portion of that power to the Executive Branch with regard to amending the HTSUS, the Harmonized Tariff Schedule of the United States, but only in a revenue-neutral manner. In other words, Congress explicitly reserved to itself the authority to amend the tariff statute in a way that changes duty rates, and expressly forbade the Executive Branch from changing tariff rates under 19 U.S.C. 3005 and 3006. In this case, the Executive Branch, by its own admission, did exactly what Congress forbade. It raised tariff rates. Now with this case in proper context, let's turn to see where the trial court went wrong in this case. This case is all about the interplay of these two statutes, 19 U.S.C. I think we probably understand both the statutory language and your interpretation of it from the briefs. So let me go directly, if I may, and you can come back if you want to say more about the statute. But I want to go directly to a question that I'm unsure of what your position is. And that is on 3006A, what are the President's options as you see them? May the President say very well, we all agree that the President may say that I am fine with the recommendations and I hereby issue the requisite declaration and those recommendations go into effect. May the President say I'm fine with several of the recommendations but not with others? That would be case number one and therefore I make the following amendments to the recommendations. May the President say these recommendations are entirely unsatisfactory and therefore I adopt the quite different scheme and I now lay that scheme into whatever it is, the Federal Register, wherever these things appear. Okay, under the language of the statute 3006A, I think there's two issues involved here. One, there is an explicit statutory mandate before we get to presidential discretion. Well, but what does it do on my question of what the President can do? Okay, in accordance with 3005, you have to have a recommendation. That's what under means, in accordance with Supreme Court precedent. That goes right to my question because it can only act in accordance. Yeah, once you have a tariff recommendation in accordance with 3005, then the President has two options. He can go vote up or he can vote down and he can either approve the recommendations or he can turn them down. He can't pick and choose which ones and he can't make his own modifications. He can't revise the tariff. Would that lose discretion under that statute? His discretion is to go up or down. So it's a binary decision at that point. It's a binary decision, correct. And if you look at the… It's not binary modification by modification? I mean, that seems strange to me because then it would seem that you're suggesting the commission, if they gave them to the President in series rather than all in a single document, you know, he could pick and choose. But if they're all in a single document, he's got to take them all or leave them all. Well, there have been modifications of the HTS over the years. So they do happen. They don't all happen at once. There have been a couple of them that have happened over the years. No, but when they happen, when there are multiple modifications proposed to multiple sections, are you suggesting that 3006 deprives the President of the authority to say, based on your recommendation with regard to this section, I will in fact make the modification, but I will not make it with regard to your recommendations on these other sections? If you look at the statute, it just says the President can approve or disapprove. And it takes the entire recommendation. Where does it say that? Where does it say the President can approve or disapprove? Are we talking about 3006A? 3006A. 3006A. The President may proclaim modifications based on the recommendations made by the Commission, that's the USITC, under Section 3005 of this title to the HTS if the President determines that the modifications are in conformity or do not run callous. So he can proclaim or not proclaim. Yeah, but it doesn't say approve or disapprove. Well, proclaim or not proclaim. Well, proclaim modifications. That seems to give the President a lot of discretion in determining what he's going to do with these proposed modifications. Well, I can tell you, the President, no President has ever interpreted that name that way because every HTS modification that has been put through under this statute has always been a recommendation from the USITC approved by the President. Well, but that isn't to say that the President has agreed that he lacks the power to disagree or modify. He's simply exercising his authority to agree. But the President has never disapproved. And under the Bennett case, that is evidence, the Supreme Court Bennett case, that is evidence that, in fact, if the President always approves a recommendation, that's evidence that the recommendation is indeed final. You know, I could agree with my law clerks in every case this week up until Friday and check their bench memos and say, yep, this looks right to me. That doesn't say anything about my authority or lack of authority to disagree with my law clerks. I don't see the fact that empirically the Presidents have frequently, even perhaps unanimously, agreed with the recommendation says anything to us about the legal restrictions on the President's authority. And that seems to be a pretty large leap. Well, the President has always approved that. I don't think there's any authority in here to say the President can say, oh, I don't like your recommendation, I'm going to take part of it and disagree with part of it. Or, as the trial court in this case said, the President can come up with his own recommendation. Well, then tomorrow the President can raise all tariff rates to 1,000 percent under the trial court's decision. That's a ridiculous decision. Well, even the language of the statute provides for may. May proclaim. May proclaim. That does provide for some action. But it has to be based on the recommendations. Right. So he can base it on the recommendations or he can turn them down. That's no discretion at all. No, there's no discretion to vote up or down. Beyond that. You're saying you're not going to modify any of the HUST classifications that are submitted. No, there's no discretion. Your idea, though, about the 1,000 doesn't make sense because there is a limitation on the President. Before he can proclaim modifications, the President must determine the modifications are in conformity with U.S. obligations and don't run counter. If he increased all tariff rates to 1,000 bucks, I think it would be pretty hard to justify that he determined that it wasn't counter to or didn't run. But if you look at these, 1 and 2 are self-executing. That's where the President's discretion comes in. If it's self-executing, the President has the discretion to decide if 1 and 2 are met. And if 1 and 2 are met, then no court can review it. I agree. He has the discretion to decide whether 1 or 2 are met, but we do have the authority to make sure that he made the determination. And what we're asking the court to do is to review the explicit statutory mandate, prerequisite to get to presidential action. Well, who would you rather have making the determination? Us? What determination are you talking about? The determination in 1 or 2. You said that we don't have authority to review his determination on the merits. Isn't the President the appropriate source for making the determination? I mean, this court has authority to review the explicit prerequisite to presidential discretion in accordance with the Korres Group case, which Judge Gahars is very familiar with. That case said if there is an explicit statutory mandate prerequisite to presidential discretion, and it's a case involving tariffs, then the Court of International Trade has jurisdiction to review whether that prerequisite was met. And that's on all fours with this case. Well, I don't know. That seems to me an overstatement. Korres is a case in which, as you recall, I mean, I'm sure you know, is a case in which there was a question as to whether there had even been the required determination by the commission. And this is a case in which there's no doubt that there's been a recommendation, and your challenge is to the lawfulness of the action, not to the question of whether the action took place at all. I mean, if this had been a case in which we were told the President may only act upon a recommendation after a recommendation is made, and no recommendation is made, and the President went ahead, then it seems to me you'd be on all fours with Korres. But that's not this case. No, this case is you have an explicit statute which says the USITC must do this, and the language is mandatory in the statute. Five times there's mandatory language in that statute. The recommendation must be revenue neutral. Korres couldn't have been more clear, and yet the USITC came up with an amendment to the statute that's clearly not revenue neutral, as the government has admitted multiple times. And the government's own language in their briefs, you can read it for yourself. They may deny that they admitted this, but you can read it for yourself, and it's pretty clear that the government has admitted this tariff amendment was not revenue neutral. And, of course, they did exactly what Korres told them not to do. And once you don't have a, I mean, if we had a valid recommendation from the USITC that met all the requirements that Korres laid out, then whether the president approved it or disapproved it, we wouldn't be here. The problem is we have a recommendation from the USITC that doesn't meet the requirements of the statute. Because it's not revenue neutral. Because it's not revenue neutral. That's the only issue. That's the only issue. You're correct. And what is the cause of action that you have, and against whom does that cause of action operate? The cause of action is against the United States. I suppose the remedy we're seeking is to get the USITC to correct it. Let's stay with cause of action before we get to remedy. Is your cause of action the APA? No, I think it's a cause of action. There's an explicit statutory mandate at issue here, and we have a tariff statute that was violated. Right, but how do you get review by a court? Well, it's interesting. I think our jurisdiction is the correct way to go because you can file a protest, but the customs service doesn't have authority to review. I wasn't clear in my question. The question is what is the cause of action, not which court can entertain the cause of action. 1581I is a statute which says that if you have a cause of action, and that cause of action falls within the following parameters, then the Court of International Trade will be the place you go. But 1581I, I think you'll agree, doesn't create a separate cause of action. You have to have a separate cause of action. It gives the court jurisdiction over any case involving tariff statutes. There is an otherwise created cause of action, and that raises the question of what is the cause of action. Is it an APA cause of action? I think this is, you've got a choice between a jurisdiction. It has to go to the Court of International Trade because it's a tariff case. Right. So you've got a choice between 1581I, and I think it fits under 1581I. But again, what's the cause of action? Is it an APA-based cause of action that you're prosecuting? I think it's just a statutory review of a tariff statute. I think it's statutory in this case. Well, if you don't have an APA action, how do you get the waiver of sovereign immunity? I think I issue a waiver of sovereign immunity. I mean, under the decisions, I jurisdiction is not explicitly limited to APA. That's most of the cases that are not limited. You can't have, under I jurisdiction, you can't have challenges to statutes that are improper. Under what authority? Under what separate authority? I guess the question is… Well, here's the alternative. If you don't have any court that can review this, then under the trial court's decision, 3005, meaningless, goodbye. The statute is meaningless. It's rendered meaningless. And you never interpret a statute so that it's meaningless. You have to have some way of reviewing this. You know, it's flattering to the courts to say that a statute is meaningless unless there is court review of it, I suppose. But there certainly are instances in which the courts, including the Supreme Court, have said, you know, the fact that Congress has provided for no review in a court is a choice that Congress can make, short of having a constitutional issue that is barred from the courts. I mean, that certainly is the case. The ACA itself talks about issues that are specifically precluded from judicial review. There's a whole category of those. But this case touches on constitutional issues as well because we have Congress, who has the sole authority under the Constitution to amend statutes, and Congress can delegate that authority or a portion thereof to the executive branch, and that's what's happened here. There are constitutional issues involved in this case. When Congress delegates its authority to the executive branch, the judicial branch has to be able to review that to see whether the authority was exercised properly. Let me ask you a question. Under 1581, would the President then also be a defendant in the cause of action? That I don't know. I can't give you an answer to that. We haven't tried to answer that in the motion system yet. We don't have a resolution yet. Why don't we say, well, we've run through your rebuttal time, but we'll give you back at least a couple of minutes of rebuttal time, depending on need. And let's hear from the government.  Thank you, Your Honor. May it please the Court. The majority in motion systems made it very clear that under 1581I, there are three possible causes of action. There can be an express statutory right of review. There can be a non-statutory right of review, i.e., a constitutional claim, or there can be an APA cause of action. The majority decision was very clear in motion systems on that. What do you take? Let me introduce it, since you started right with that. Do you take it that the non-statutory cause of action that was alluded to in motion systems is limited to constitutional claims, Webster against Doe-type situation, or do you think there are other categories, common law mandamus, maybe? Potentially there could be, I suppose, but the cases under the type of those non-statutory types of cases have been, such as in Tote's Isotoner, have been constitutional claims, the harbor maintenance. Yeah, I think you're right that most of them are. They have been constitutional type of claims. There is not a constitutional claim here. In Joint Appendix, page 22, paragraph 3 of the complaints, they state explicitly that their cause of action is an APA cause of action. Now, Michael Simon is assiduously running away from its APA cause of action, but that's what it alleged in its complaint. It never amended its complaint below, and that's what Judge Barzilay reviews below. She reviewed whether there was an APA cause of action, and for the reasons the trial court correctly held, there simply is not a cause of action. Now, if I could touch upon another issue raised with counsel. Even taking the most restrictive view of the president's discretion under 19 U.S.C. 3006, even taking the most restrictive view that Michael Simon advocates, the Supreme Court in Dalton v. Specter has already advocated a very limited range of presidential options. At 511 U.S., at 470, in Dalton v. Specter, the Supreme Court said that the president cannot pick and choose among bases and must accept or reject the entire package offered by the commission is immaterial. What is crucial is the fact that the president, not the commission, takes the final action that affects the military installations. And that's precisely what we have here. This case is indistinguishable from Dalton v. Specter in any material way, which is what the trial court relied upon below. And I say this sparingly Judge Gallarza here, but it's indistinguishable from the majority's decision and motion systems as well. What do you think, and I understand that you don't regard this as essential to your case, but what do you think the scope of the president's authority is under 3006A? Do you think the president could say, thank you very much for your recommendation, here's what I'm going to do. I'm going to accept a couple of them, I'm going to reject a couple of them, and I'm going to change a number of them? We haven't briefed that issue. I understand, but it would help me to get a feeling for what you're... I'm trying to answer Your Honor's question. I think a fair reading of it would be the concept of a line item veto maybe, as Judge Moore was saying, the commission could provide one modification at a time or there could be a package. I think what has happened in practice has been, and if the commission could correct me and provide supplemental briefing, I think I'm horribly wrong, but I think what's happened in the past is there have been a package. The president has made these mandatory determinations that they are, you know, that the package and modification is in conformity. And you agree that if the president didn't make those determinations and acted to proper modifications, refusing outright or simply not complying with the necessary determinations, that that would be something potentially subject to judicial review. Well, I think that... I gave you potentially. Potentially we're running into Judge Gallarza's concurring decision in motion systems, which left open the question, would that be sort of maple leaf type of review, whether the president has complied with certain procedural requirements, would that be subject to judicial review? Judge Gallarza, you're sitting here, in Your Honor's opinion, I think you described the majority's decision in motion systems as potentially precluding that type of review. And Your Honor also noted that the Supreme Court in Dalton v. Specter, in Your Honor's view, did not foreclose that type of maple leaf type of review for lack of better term. You might have expanded Dalton beyond its stretching points. But could the president essentially change the proposition, provided any of the changes that are made are still revenue neutral? Well, I think that the fair reading of the statute would be that the president... I think it's an open question. The statute reads, probably a more ordinary interpretation of the statute would be the president takes the commission's recommendations of modifications, makes the president's own discretionary determination under 1 and 2 of 3006, and may either proclaim them or not proclaim them. And whether there's a line on a veto, it's not foreclosed by the statutory language. Whether the president can say, I don't want to modify what the commission says, I want to modify this whole other separate tariff schedule, that does not seem to be within the scheme, but that's not really... Hypothetically, if he was given five different alternatives and he changed two of the five, but still made the total package revenue neutral, would that be acceptable? Would he have the discretion to do that? I think, yes, he will. Yes, I do. I think he has the discretion under the statute. And really what the president's directives are, are to make, proclaim modifications that are in conformity with the United States obligations under the convention and that do not run counter to the national economic interest. Really, that's the president's charge. As we've argued and as we state in our briefs, the commission's reports are subject to... The commission's recommendation to the president is subject to statutory requirements set forth in 3005, but it's really not any different than... There are lots of requirements. For instance, the motion systems address section 421. There are requirements in that statutory scheme. It's not customary... It's customary for subordinate officers of the president to be subject to statutory requirements. And, in fact, going back to Dalton v. Specter, again, the Supreme Court directly addressed the issue of the subordinate officer's compliance with statutory requirements, again, at 511 U.S. at 476. And the Supreme Court said in Dalton v. Specter that the president's authority to act is not contingent on the secretary's and commission's fulfillment of all the procedural requirements imposed upon them by the 1990 Act. Nothing in section 2903E requires the president to determine whether the secretary or the commission committed any procedural violations in making their recommendations, nor does section 2903E prohibit the president from approving recommendations that are procedurally flawed. Indeed, nothing in section 2903E prevents the president from approving or disapproving the recommendations for whatever reason he sees fit. And I think that... That's pretty broad discretionary language. Yes. Mr. Goggin had stood up there before and said the president can only make a binary determination, yes or no, and must accept it as presented. Well, that was true in Dalton v. Specter as well. The president couldn't pick another base. The president couldn't choose among bases. The president's... In Dalton v. Specter, the president's discretion to extend its cabin by the... Excuse me, Michael Simon is saying it's a massive mess. He's saying that was the similar... That was the case in Dalton v. Specter as well. So the issue is whether really there should be APA review of a non-final commission recommendation that has no legal effect. It's not like Japan whaling that has immediate consequences upon a party here. And that simply isn't the case here. The one thing I'd like to know, although I urge the court, of course, not to get into the merits of this, but I must clarify for the record, because I'm a co-counsel, we do not concede that this is in violation of statute. You don't agree it's not revenue? We do not agree that it violates... You were fooled that that was a unanimous agreement. Don't worry. I just wanted to make that clear for the record. If the court has any questions, I ask that the judgment below be affirmed. Well, let me ask you one thing about the operation of 1581I to make sure I understand your position. Do you think that 1581I modifies in any way the finality requirement of the APA? Judge Garrison addressed that in the concurring decision in motion systems. No, we do not. We think it's quite clear that there's... I think that the majority decision made that clear in motion systems, that the final action was taken by the President and that the trade representatives' recommendations were not final. Which I take it is... And the way you reach that conclusion, I take it, would be by saying that, what? 1581I, as I understand your position, it's a vessel. It is not... It doesn't erect a new cause of action. It is a vessel into which other causes of action may be poured, and when they are poured into that particular vessel, that vessel is delivered to the door of the Court of International Trade. It has no substantive effect. It creates no right, other than the right to appear before the Court of International Trade with whatever the cause of action gives you. Precisely. As an analog, perhaps, to the Tucker Act and the Court of Federal Claims, it doesn't provide a new cause of action. Although I do think that the Court of International... I think that this Court, rather, the majority decision in motion systems, did make clear that the cause of action that is provided for those, much like in the Tucker Act with bid protest jurisdiction, the cause of action that's provided is an EPA cause of action. I think that the Court made that very clear in motion systems. And because there's no EPA cause of action, the trial court could correctly dismiss this action below. Very well. Thank you. Thank you. Mr. Goggins. I'm going to read you a citation from the Corus Group case. The statutory standard for that analysis... Where are you reading from, if you have the page number? Corus Group, 352 F. 3rd, 1351. And your jump site is? Page is 1361. Okay. Towards the end of 1361. You have to footnote 7. The statutory standard for that analysis here is not the traditional APA standard or review. Instead, as we held in Maple Leaf, blah, blah, blah, under the skip clause provision of the Trade Act of 1974, quote, for a court to interpose, there has to be a clear misconstruction of the governing statute, a significant procedural violation, or, and this is the key language here, or action outside delegated authority. That's what we have in this case. We have Congress delegating authority, says you can amend the HDS, but you have to keep it government neutral. And we have action outside the delegated authority. In those situations, the Court of International Trade has jurisdiction to review the matter and to review whether the prerequisite has been met. Suppose Congress had said, in making the recommendation commission, you must allow a 180-day period of comment, and the commission had terminated the period of comment after 160 days. Would you be making the same argument that that was action outside delegated authority? That's a procedural violation. We're not dealing with a procedural violation in this case. We're dealing with a substantive violation. Congress said you can amend the statute, but there's one thing you cannot do. You cannot change tariff rates. And they used very mandatory language. And that's exactly what has happened in this case. Everyone knows the three-dimensional standard that the government has used as the tariff, the way of making things tariff rate neutral. This Court has rejected that standard on multiple occasions. Indeed, the Court of International Trade called it inexcusably irresponsible. So we're going to allow, if you allow the trial court decision to stand, then you're going to allow something that's inexcusably irresponsible to work its way into the tariff schedule, and you're going to allow the executive branch a way of overturning this Court's decisions. Well, I don't think Congress delegated that authority. Congress can overturn this Court's decisions. Our bank can overturn, the Supreme Court, not the executive branch, and certainly not under this statute. And what's interesting is the government seems to agree with me that it is a binary decision, up or down. The President does not have the authority to ask for revisions. That's what distinguishes the Dalton case. But that was true in Dalton, too. No, the President had the authority to ask for revisions to the money. He could remand it back to the agency to come up with a new recommendation. There's no such authority. But as far as, say, his choice, he couldn't pick and choose among the bases. He had to take all the bases or none of them. But he could ask for revisions. And you think that's the critical factor that made the difference in Dalton? That's a big, critical difference. And you think there was a modification that could be considered as a modification? Because he did not have to pick all of the bases. He could pick some and request a modification at that point. That's correct. That's the critical issue in Dalton, is that the President could ask the agency, remand it back to the agency, and ask them to revise the recommendation. We don't have that authority in this case. It's either up or down. And the government agrees with me on that one. And the last thing is, in the motion systems case... The government didn't totally agree with you on that. I heard them agreeing with that. In the motion systems case, the one thing the motion systems case said, in that situation, there was no callable claim that the President violated an explicit statutory mandate. Here, we got it plain as day. 3.005 says you cannot make a tariff modification that's not revenue neutral. That's been violated. The government may agree or disagree, but you can look at their language itself. And actually, all you have to do is look at the three-dimensional. When was that the law for the rest of our laws? This Court has rejected that many, many times. Okay. Thank you. Oh, I'm sorry. Yes, I think from this point, the way I foresee this case working out, if you agree with me, and you reverse the trial court, a couple of things you can do. You can either make your own determination, this is indeed not revenue neutral, because this Court is well aware that the three-dimensional standard is nonsense. It's not. It's not a proper interpretation of this Court's precedent. It's not even remotely reasonable as an interpretation of this Court's precedent on the proper scope of festive articles. Or you could remand it to the trial court and ask them to make that determination. But I think eventually the trial court is going to have to remand it to the USITC with instructions for them to propose a fix to the statute. Fix 9817 so that it reflects the true scope of festive articles, and indeed, not just the Michael Simon case, Midwest, Park B. Smith, Michael Simon, Wilton Industries. I mean, this issue has been litigated and litigated to death. Thank you, Mr. Bogdanoff. Thank you. I thank both counsel. The case is submitted. All rise.